47 CCPA

**Application of Jules ROTH.**
**Patent Appeal No. 6472.**

United States Court of Customs and Patent Appeals.
March 8, 1960.

John Flam, Los Angeles, Cal., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Martinsburg, W. Va., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

KIRKPATRICK, Judge.

This is an appeal from the decision of the Board of Appeals of the Patent Office affirming the Primary Examiner's rejection of two claims as unpatentable over certain prior art patents.

The references relied upon are:

| Moore | 863,303 | Aug. 13, 1907 |
|---|---|---|
| Dietz et al. | 1,020,747 | Mar. 19, 1912 |
| Tovell | 2,087,864 | July 20, 1937 |

The subject of the application is described as a "Crypt Building Structure." Claim 4, which may be taken as typical of both, is:

"In a building of the character described: a pair of spaced walls; vertical and horizontal partitions associated with each wall, defining vertically arranged crypts along each wall; there being at least four vertical tiers of crypts along each wall and providing an access corridor between the crypts on opposite walls; said crypts being arranged lengthwise along each wall; said access corridor having a width corresponding to the depth of the crypts;

---

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'Connell,* pursuant to provisions of Section 294(d), Title 28 U.S.C.

alternate horizontal partitions integrally formed with the walls and projecting between the walls to define floors along the length of the building; an end wall for the building having openings for gaining entrance to the floors; and removable covers for said openings."

The structure claimed, as disclosed in the specification and drawings, is a rectangular building made of reinforced concrete divided lengthwise into three identical sections by concrete walls. The sections are entirely separate with no intercommunication whatever.

A section has four floors with shelves along each side. The shelves are divided by vertical partitions so as to form tiers of crypts each large enough to hold a coffin stowed lengthwise with the building and adapted to be closed by a slab. The space between the tiers of crypts on each floor forms a narrow passageway no wider than the crypts are deep, with an opening in the wall of the building at each end. The access openings are provided with marble slabs as covers so that the whole thing can be shut up tight.

Ventilation is provided by conventional means, but there are no windows and no doors, unless the cramped access openings to each floor can be so described. The passageways allow just enough space to permit workmen to get the coffins into the crypts, but there is no room for visitors or mourners as there is in the usual type of mausoleum. The building is little more than a storage bin, and this point of difference between it and the ordinary mausoleum is about the only new thing about it.

A consideration of the references upon which the board based its affirmance of the examiner's rejection of the claims leaves no doubt that the appellant has done nothing that would not be obvious to one planning a compact structure for the housing of coffins, with economy of space as the prime objective.

Tovell's storage house allocates the space within it in much the same manner as the appellant's structure, and the appellant has achieved no unexpected result beyond its teachings. The appellant argues that Tovell was not so much interested in conserving space as in convenience of access and in preventing the spread of fire, suggesting at the same time that Tovell was working in a non-analogous art. Tovell put an elevator in his building which took up some room, but it certainly was not unobvious to save that much space by providing openings to which caskets could be raised by outside elevating devices and passed into the building. Although Tovell's building is for a different purpose, it has to do with storage and is closely enough related to the art of the application to be a valid reference.

Moore's patented structure is a mausoleum. It has all the major structural elements called for by the claims except that, having only one floor and one tier of crypts on each side of its passageway, it does not need the arrangement by which the application projects alternate shelves to act as floors for the upper passageways—a simple and obvious expedient. Its door serves the same purpose as the appellant's access openings. As the board notes, the appellant's structure is essentially Moore's duplicated "in all directions, that is laterally, longitudinally, and vertically, so as to correspondingly multiply the number of tiers of crypts."

In view of Tovell and Moore it is hardly necessary to consider Dietz et al. except to note that it teaches making a mausoleum structure of multiple vertical tiers of crypts or storage spaces.

██ We are aware that it has been held in In re Pennington, 241 F.2d 750, 754, 44 CCPA 789, that patentable invention may sometimes consist in "the conception of the general result wished for," that is, the perception of a problem, even though the means adopted to solve it may be obvious to one skilled in the art, but in this case it was, to say the least, no remarkable discovery to grasp the fact that cemeteries were getting crowded and that it would be desirable to save space. Both the problem and the means were obvious.

The decision of the board is affirmed.

Affirmed.